IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA KINSEY, | ) | CASE NO. 4:16 CV 2194 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

Before me[1] is an action by Rhonda Kinsey under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 12. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 5.

[6] ECF # 11.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**Facts**

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Kinsey, who was 57 years old at the time of the administrative hearing,[11] has an eleventh grade education.[12] She is married and lives with her husband.[13]  Her past employment includes work as a cashier and stock clerk.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Kinsey had the following severe impairments: chronic obstructive pulmonary disease (COPD)/asthma (20 CFR 404.1520(c)).[15]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Kinsey's residual functional capacity ("RFC"):

---

[7] ECF # 21 (Commissioner's brief); ECF # 16 (Kinsey's brief).

[8] ECF # 21-1 (Commissioner's charts); ECF # 16-1 (Kinsey's charts).

[9] ECF # 15 (Kinsey's fact sheet).

[10] ECF # INSERT.

[11] ECF # 9, Transcript ("Tr.") at 40.

[12] *Id*.

[13] *Id*.

[14] *Id*. at 42-44.

[15] *Id*. at 23.

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20CFR 404.1567(b) except she can frequently climb ramps, stairs, ladders, ropes or scaffolds. She must avoid even moderate exposure to respiratory irritants such as fumes, odors, dust, gases, and temperature extremes and concentrated exposure to hazards.[16]

Based on that residual functional capacity, the ALJ found Kinsey capable of her past relevant work as a cashier[17] and, therefore, not under a disability.[18]

**B.  Issues on judicial review**

Kinsey asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Kinsey presents the following issues for judicial review:

- Whether the ALJ erred in failing to give good and specific reasons supported by accurate facts within the record for rejecting to [*sic*] opinions of a consulting physician.

- Whether substantial evidence supports the ALJ's decision that plaintiff's skin condition, diagnosed as "lichen planus" was not a severe impairment.

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

# Analysis

**A.  Standards of review - substantial evidence**

---

[16] *Id.* at 24.

[17] *Id.* at 26.

[18] *Id.* at 27.

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.     Application of standards**

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

*1.    Dr. Lakhani*

As noted above, following the hearing the ALJ here ordered that Kinsey undergo a consultative examination with Dr. Pradhudas Lakhani, M.D., which examination was conducted in June 2015.[22] Dr. Lakhani found that Kinsey had COPD[23] and also found that she had lichen planus of the hands and right foot.[24] As to functional limitations, the ALJ summarized Dr. Lakhani's findings as follows:

> Consultative examiner, Pradhudas Lakhani, MD opined on June 4, 2015 that the claimant could occasionally lift up to 10 pounds, sit 6 hours, stand 4 hours, and walk 2 hours total, with sitting 2 hours at a time, standing 30 minutes at a time, and walking 10-15 minutes at a time. He noted her hands were limited to occasional reaching in all directions bilaterally, frequent handling bilaterally, never pushing and pulling, occasional foot controls, occasional climbing ramps and stairs, stooping, kneeling, crouching, and crawling, and no climbing ladders. He noted she could occasionally operate a motor vehicle, never be exposed to hazards, humidity, wetness, temperature extremes or vibrations, and could have moderate exposure to office noise due to dizziness and shortness of breath (9F).[25]

The ALJ then assigned little weight to these limitations, reasoning as follows:

> Dr. Lakhani's opinion is given little weight, as it is inconsistent with his examination of the claimant, which was entirely normal, other than that breath sounds were harsh. That single finding does not merit his extreme limitations. It is further inconsistent with the other medical evidence of record, which generally notes entirely normal exam findings (5F/18, l F). It is inconsistent with the prior CE which also found normal oxygen rates and breath sounds (2F). Further, his noted manipulative limitations "due to shortness of breath"

---

[22] Tr. at 448-462.

[23] *Id*. at 449-50.

[24] *Id*. at 448.

[25] *Id*. at 26.

do not make sense, nor do restrictions regarding operation of a motor vehicle, and avoidance of noise and vibrations (9F/8-9). In addition, his statement is internally inconsistent, as he indicates all of these limitations, yet he states she can independently shop, care for hygiene, walk a block a reasonable pace, use public transportation, climb a few steps, and prepare simple meals (9F/10).[26]

Kinsey observes in her brief that '[h]ad the ALJ given any degree of weight to Dr. Lakhani's opinion, a finding of disability would necessarily have resulted, as Dr. Lakhani's opinion is for sedentary capacity, at best, and Ms. Kinsey, over age 50 and without transferable skills, and with no sedentary work experience, would 'grid' with a sedentary residual functional capacity under the Medical-Vocational Rules (20 C.F.R. Part 404, Subpart P. Appendix 2)."[27] Thus, she argues, any reversible error by the ALJ in the assignment of weight to Dr. Lakhani's opinion "is directly prejudicial" to her claim.[28]

In that regard, Kinsey initially argues that the ALJ was impermissibly "playing doctor" when he concluded that the finding of harsh lung sounds in connection with COPD does not support the "extreme" functional limitations set out by Dr. Lakhani.[29] The Commissioner responds, however, that the ALJ found the harsh breath sounds were inconsistent with the rest of the examination, which appeared normal,[30] and which showed

---

[26] *Id*.

[27] ECF # 16 at 9.

[28] *Id.*

[29] *Id*.

[30] ECF # 21 at 8 (citing tr. at 26).

-6-

that Kinsey was ambulating normally without assistance.[31] More important, the ALJ here observed that Dr. Lakhani's harsh lung sound finding was inconsistent with a prior consultative examination, which "found normal oxygen rates and breath sounds."[32] Further, the ALJ reasoned that restrictions in Dr. Lakhani's opinion such as avoiding noise and vibrations "do not make sense' as a response to a finding of shortness of breath," and that such restrictions are themselves inconsistent with Dr. Lakhani's own notes, which indicate that Kinsey can independently shop, walk a block at a reasonable pace, and climb a few stairs.[33]

The ALJ was not substituting his own judgment for that of Dr. Lakhani, nor was he making his own independent medical finding.[34] Rather, as the Commissioner states,[35] the ALJ engaged in determining the appropriate weight to assign to Dr. Lakhani's opinion, and doing so according to the relevant standards. In particular, Dr. Lakhani as a consultative examiner is not entitled to be evaluated as a treating source, and the weight given to his opinion is,

---

[31] Tr. at 449, 459-62.

[32] Tr. at 26 (citing record).

[33] *Id.*

[34] ECF # 16 at 9.

[35] ECF # 21 at 10.

therefore, presumed to be less than that given to a treating source, but more than is given to a non-examining reviewing source.[36]

Accordingly, as I observed in *Tolbert v. Commissioner of Social Security*:

But, an "ALJ need not give reasons for discounting an examining source's opinion" because such an opinion was never presumptively entitled to any such controlling weight in the first instance. Indeed the Sixth Circuit has recently re-emphasized that where, as here, the opinion under review is from "an examining psychologist-not a treating doctor-his opinion is not entitled to any special deference." Rather, the opinions of non-treating sources are never presumed to have controlling weight, but are assigned weight based on the various factors in the regulations, such as "the examining relationship (or lack thereof), specialization, consistency and supportability."[37]

The ALJ properly evaluated the opinion of Dr. Lakhani, and properly articulated the foundation for the weight assigned. That articulation is capable of meaningful judicial review, and the reasons stated are supported by substantial evidence.

## 2. *Lichen planus*

As noted, Kinsey was diagnosed with lichen planus, but the ALJ did not find this to be a severe impairment.[38] The reason stated by the ALJ was that the impairment did not meet

---

[36] *Cook v. Commissioner of Social Security,* 2016 WL 3944757, at *3 (S.D. Ohio June 29, 2016), report and recommendation adopted, 2016 WL 3945695 (S.D. Ohio July 19, 2016).

[37] *Tolbert v. Comm'r of Social Security*, 2014 WL 1094378, at * 3 (N.D. Ohio March 18, 2014)(Footnotes omitted).

[38] Tr. at 23.

the 12-month durational requirement, with the additional reason that nothing in the record showed her as having limited use of her hands as a result of this condition.[39]

The first reason cited by the ALJ may not be supportable given that Kinsey appears to have sought treatment for this condition since October 2013.[40] As to the second reason, Kinsey further argues that the ALJ erred in claiming her hands were not affected because Dr. Lakhani opined that Kinsey was unable to open jars during flare-ups of this condition, and so restricted Kinsey's use of her hands to no more than frequent handling bilaterally.[41]

The Commissioner counters by noting that Dr. Lakhani's opinion as to functional limitations - which is discussed above - also stated that Kinsey could pick up a coin and key, write, hold a cup, use a button or zipper, and open a door without difficulty.[42] The Commissioner also notes that the ALJ took notice on the record that Kinsey could shop, prepare meals, and care for her own hygiene.[43] Finally, the Commissioner also points out that "neither the dermatologist nor her other treating providers that treated her rashes opined that she had any functional limitations due to her skin condition."[44]

---

[39] *Id.*

[40] See, tr. at 348.

[41] ECF # 16 at 14 (citing record).

[42] Tr. at 460.

[43] Tr. at 26.

[44] ECF # 21 at 8.

I find no error in the ALJ's decision at Step Two to not find lichen planus as a severe impairment.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Kinsey had no disability. Accordingly, the decision of the Commissioner denying Kinsey disability insurance benefits is affirmed.

IT IS SO ORDERED.

Dated: September 29, 2017  s/ William H. Baughman, Jr.
United States Magistrate Judge